IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIM PIGNATO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 7090 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| GIVAUDAN FLAVORS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

On October 7, 2011, Tim Pignato ("plaintiff") filed a two-count complaint against defendant and former employer Givaudan Flavors Corporation ("defendant") alleging violations of the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 et. seq., (Count I) and retaliatory discharge in violation of Illinois public policy in connection with his termination from employment (Count II). On November 16, 2012, defendant filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons given below, the court grants defendant's motion on Count I and denies defendant's motion on Count II.

### **Background**[1]

Plaintiff was employed by defendant for approximately ten years, most recently serving as the maintenance supervisor at defendant's food manufacturing production facility in Itasca, Illinois, from 2008 until November 2010. During mid-October of 2010, defendant hired a contractor to paint the Itasca facility. On October 26, 2010, shortly after the task was complete, plant employees noticed that the ceiling paint in the plant had begun to chip. The paint chips fell

---

[1] The following facts are, unless otherwise specified, undisputed and come from the parties' L.R. 56.1 statements.

into blenders used to produce food products and steps were taken on October 26, 27, and 28 to sanitize both the facility and the blenders. Plaintiff and defendant dispute the events surrounding defendant's response to the peeling paint situation and plaintiff's advice during the course of the incident.

On October 26, 2010, in response to the discovery of the falling paint chips, operations manager and plaintiff's supervisor, Tom Grant, halted production and directed workers to "wet wash" the food blenders in the facility to remove the paint chips and sanitize the machines. He further ordered plaintiff to immediately hang plastic sheeting in the production hall over the product zones to prevent paint chips from getting into the food blenders, and to hang additional sheeting over a larger area the next morning. These tasks were completed. On October 27, 2010, a reassessment of the facility was done at 5:00 a.m. According to defendant, Grant gave instructions that if additional paint chips were found after the sanitation was complete and additional plastic was hung, production should be halted further and maintenance staff should do a second round of sanitation of the blenders.

At 7:00 a.m., after the additional sheeting was hung, plaintiff spoke to Grant, who had left the facility. According to Grant, plaintiff lied and told Grant that plaintiff and the other managers were comfortable with resuming production. Grant alleges that the other managers at that meeting did not agree with plaintiff that it was safe to resume production, and that plaintiff was very upset with the other supervisors for their failure to agree with his assessment and was very defensive in the meeting. Plaintiff disputes this version of events and claims that, after the first sanitation was complete and the plastic was hung, he realized that additional "wet washing" of the production facility would generate steam and cause more paint to flake. He claims that he

2

communicated his concerns to Grant and suggested that to solve the problem, the plant surface be stripped of paint entirely. Plaintiff alleges that he advocated shutting down production and that Grant refused to do so. Two more rounds of sanitation were done, and paint chips were discovered after each cleaning, which Grant blamed on plaintiff. The facility did not resume production on October 27 or 28.

Plaintiff did not work on October 29, 2010. When he returned to work on October 30, plaintiff claims that he discovered paint chips throughout the facility and attempted to convince the Production Manager, Brian Fox, to shut down production. According to plaintiff, when Fox related that others agreed but that it was not his decision to make, plaintiff decided to take action. He called the FDA hotline, as well as the company whose products were being produced at the facility, and emailed Grant's supervisor to inform the supervisor of his concerns. On November 1, 2010, plaintiff again called the customer company and advised them of possible contamination of their products.

At about 7:00 p.m. on November 3, 2010, Grant called plaintiff and informed him that he was suspended indefinitely pending further investigation. On November 5, 2010, Tina Steifel, a human resources employee, called plaintiff into the facility, where he was informed that he had been terminated. Plaintiff contends that he was terminated as a result of his whistleblowing activities, in violation of the IWA and Illinois public policy.

## DISCUSSION

**A.     Summary Judgment Standard**

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment

3

as a matter of law. See Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services–Milwaukee Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). The nonmoving party must, however, do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**B.      Claim under the IWA and Retaliatory Discharge**

Plaintiff has asserted two claims: violation of the IWA, 740 ILCS 174/1 et. seq., and retaliatory discharge in violation of Illinois public policy in connection with his termination from employment. The IWA prohibits an employer from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has

reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15. The Act also prohibits an employers from "retaliat[ing] against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation . . . ." 740 ILCS 174/20. Plaintiff claims that both provisions apply to this case, because he both made a report to the FDA and refused to participate in the running of production while he believed FDA regulations were being compromised.

The common-law tort of retaliatory discharge "is a narrow exception to the at-will employment doctrine and can be established if a plaintiff shows that (1) she has been discharged; (2) in retaliation for her activities; and (3) the discharge violates a clear mandate of public policy." Thomas v. Guardsmark, LLC, 487 F.3d 531, 535–536 (7th Cir. 2007). The termination of an employee due to the employee's whistle-blowing activities violates public policy for purposes of establishing a retaliatory-discharge claim. Palmateer v. International Harvester Co., 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (Ill.S.Ct.1981). In the instant case, the claims overlap, because plaintiff alleges retaliation in the form of a discharge and the disclosure of information to the government.

Regarding the IWA claim, the parties do not dispute that plaintiff made a disclosure to a government entity, or that the disclosure involved a potential violation of federal regulations. The parties disagree as to whether plaintiff's termination was retaliatory. Whether the termination was in response to plaintiff's various disclosures or due to his job performance is central to both counts.

Plaintiff asserts that defendant had knowledge of his whistleblowing activities and terminated him within days of his protected disclosures. He argues that the suspicious timing, coupled with other circumstantial evidence, raises an inference of a causal link.

Defendant claims that the decision to terminate plaintiff was made by Grant on October 27, 2010, before plaintiff made the calls in question to the FDA and the customer, and was therefore not retaliatory. Defendant asserts that this decision was based on plaintiff's alleged uncooperative behavior during the paint incident and that Grant communicated his decision to the human resources department the next day. This decision is documented, according to defendant, in a email sent by Steifel, to another human resources employee, Robert Sherwood, on October 28, 2010, stating that Grant "would like to restructure the department and eliminate [plaintiff's] position."[2] Defendant buttresses this email with another email written by Grant on November 1, 2010, to Steifel documenting his version of the paint incident and plaintiff's alleged insubordination. Defendant asserts that these emails demonstrate definitively that the termination decision was made prior to the protected action.

Steifel's email, however, falls short of incontrovertible evidence of a decision to terminate plaintiff. Although the email confirms that Grant was not pleased with plaintiff's performance, the language in the email about eliminating plaintiff's position does not demonstrate that the decision to terminate plaintiff because of poor performance had been made on October 27, 2010. As plaintiff points out, and as defendant's actions confirm, it is defendant's policy that all termination decisions must be approved by the human resources manager. After October 28, 2010, Steifel initiated an investigation into the events surrounding

---

[2]Defendant also relies on the affidavits of Steifel and Grant to support this point.

the paint incident, which likewise indicates that a final decision to terminate plaintiff had not been made and approval from human resources was pending. Although defendant cites <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 272 (2001), for the proposition that "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality," Stiefel's email does not state that Grant wished to terminate plaintiff for performance reasons, but rather obliquely talks of "restructuring the department." Grant's supplemental email of November 1, 2012, discussing plaintiff's alleged poor performance was written on the same date that plaintiff engaged in whistleblowing activities. Although a trier of fact might determine that Grant's motivation on October 27, 2010, was the same as on November 1, 2010, the record does not incontrovertibly support this conclusion. Defendant's assertion that summary judgment should be granted on the basis that Grant unquestionably decided to terminate plaintiff before he engaged in protected activity therefore fails.

Plaintiff, however, must do more than simply point to the suspicious timing of his termination to infer a causal link. <u>Culver v. Gorman & Co.</u>, 416 F.3d 540, 546 (7th Cir. 2005). Regarding Count II, retaliatory discrimination, plaintiff provides circumstantial evidence to support the claim that Grant and defendant knew that plaintiff had placed phone calls to a customer company prior to his termination. Grant admits that he became aware on November 1, 2010, that an anonymous Itasca employee had contacted the customer company about the peeling paint and potential contamination and had attached photographs. There were a limited number of employees involved with the paint incident, and Grant had tasked plaintiff with taking photos of the peeling paint. In plaintiff's email to Grant's supervisor on November 1, 2010, plaintiff offered to supply that supervisor with photographs. Defendant therefore had reason to

7

suspect that the anonymous employee who had contacted the consumer could be plaintiff. A trier of fact, therefore, could reasonably believe that Grant and the human resources department knew about plaintiff's protected activities and that the whistleblowing calls contributed to plaintiff's termination. Regardless of whether Grant began an inquiry into plaintiff's performance prior to the placement of the phone calls, for Count II there is a genuine question of material fact as to whether the final decision for plaintiff's termination was motivated entirely or in part by retaliatory animus. The court therefore denies defendant's motion for summary judgment on Count II.

Regarding Count I, violation of the IWA, plaintiff has not provided any additional circumstantial evidence to buttress the suspicious timing of his termination. To prove a violation of the IWA, plaintiff must show that the defendant retaliated for a disclosure made to the government (740 ILCS 174/15) or for refusing to participate in an activity that would violate state or federal laws or regulations (740 ILCS 174/20). Plaintiff does not allege that defendant knew he had contacted the FDA prior to his termination, nor does he provide any evidence to suggest such knowledge could be inferred. Plaintiff states that he did inform a coworker that he had called the FDA, but admits in his response to defendant's Rule 56 statement that he has no knowledge that the coworker informed defendant that plaintiff had called the FDA. Thus, although plaintiff has submitted evidence that defendant might have had knowledge of his call to the customer, he does not offer any circumstantial evidence that defendant knew of his call to the FDA. Plaintiff therefore has not provided circumstantial evidence in support of a violation of 740 ILCS 174/15, the disclosure provision.

Plaintiff claims that defendant was also aware of his refusal to participate in the continued running of production while the paint incident was ongoing and retaliated on that basis. He alleges that he voiced his disapproval multiple times, beginning on the morning of October 27, 2010, when he advised Grant against the "wet washing" technique and advocated for stripping the plant surface. Plaintiff does not allege that he refused to participate in the wet washing, refused to hang plastic sheeting to allow production to continue, or refused to follow through on any of the orders given to him by Grant to halt production. Plaintiff argues that his calls to the customer, call to the FDA, and email to Grant's supervisor embody his "refusal" to participate in production on October 30, 2010.[3] Yet these activities do not fall within the scope of "refusal" as contemplated by this section of the IWA. The idea that plaintiff manifested his refusal by calling the FDA does fall within the protection offered by 740 ILCS 174/20; such actions are explicitly covered by the disclosure provision of the Act, 740 ILCS 174/15.

Manifesting refusal by whistleblowing and calling the customer is not covered by this section, however, because there is no actual refusal to participate in a task, but rather the disclosure of a potential infraction. Sardiga v. N. Trust Co., 409 Ill. App. 3d 56, 62, 948 N.E.2d 652, 657 (2011) (explaining that, to claim protection under the statute, "the plaintiff must actually refuse to participate"); see also Robinson v. Alter Barge Line, Inc., 513 F.3d 668 (7th Cir. 2008). Plaintiff's actions in writing an email to Grant's supervisor likewise do not constitute refusal to participate; "'refusing' means refusing; it does not mean 'complaining' or 'questioning.'" Id. Plaintiff's affidavit confirms that the email stated plaintiff's concerns, his

---

[3]Since production was not run on October 27 and 28, and plaintiff did not work on October 29, plaintiff could not have "refused" to participate in production on those dates.

9

opinion that production should be shut down, and plaintiff's sentiment that other employees were not paying attention to his advice and experience. No refusal to participate in production is voiced, only a complaint as to how the situation was being handled. See id. ("When an employee complains to a supervisor, as opposed to a government agency, and is terminated as a result, a common law claim of retaliatory discharge arises, with which the Act does not interfere.") (citing Callahan v. Edgewater Care & Rehabilitation Center, Inc., 374 Ill.App.3d 630, 635, 313 Ill.Dec. 568 (2007)). Because plaintiff did not actually abstain from any course of conduct or voice a refusal to do any task, he cannot claim the protection of 740 ILCS 174/20. Robinson, 513 F.3d at 670. The court therefore grants defendant's motion for summary judgment on Count I, violation of the IWA.

## CONCLUSION

For the reasons described above, the court grants defendant's motion for summary judgment on Count I and denies defendant's motion for summary judgment on Count II.

**ENTER:** **March 13, 2013**

_____
**Robert W. Gettleman**
**United States District Judge**